UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:                              )
                                    )       CASE NO. 20-02780-dd
The Windermere Club, LLC            )
                                    )       CHAPTER:  11
                                    )
_____Debtor in Possession_____)

PLAN OF REORGANIZATION
Filed by the Debtor in Possession
On September 30, 2020

TABLE OF CONTENTS

## Contents

I.      INTRODUCTION ........................................................................................................ 2
II.     DEFINITIONS............................................................................................................. 3
III.    BACKGROUND .......................................................................................................... 4
IV.     FINANCIAL CONDITION OF THE DEBTOR ........................................................ 7
V.      ASSETS AND DEBTS ................................................................................................ 9
VI.     LIQUIDATION ANALYSIS...................................................................................... 10
VII.    PROPOSED PLAN...................................................................................................... 11
VIII.   TAX IMPLICATIONS ................................................................................................ 17
IX.     LITIGATION............................................................................................................... 17
X.      CLAIMS OBJECTIONS ............................................................................................ 18
XI.     FEASIBILTY OF PROPOSED PLAN OF REORGANIZATION ................................. 18
XII.    STATUS OF THE DEBTORS AFTER CONFIRMATION ............................................ 18
XIII.   EXECUTORY CONTRACTS & LEASES................................................................... 20
XIV.    JURISDICTION .......................................................................................................... 20
XV.     CONFIRMATION ....................................................................................................... 22
XVI.    SUBSTANTIAL CONSUMMATION ........................................................................ 22
XVII.   POST-CONFIRMATION ACTS.................................................................................. 23
XVIII.  "CRAM DOWN" ......................................................................................................... 23
XIX.    DISCHARGE............................................................................................................... 23
XX.     CONCLUSION............................................................................................................ 23

# I.  INTRODUCTION

On July 2, 2020, The Windermere Club, LLC ("Debtor") filed for Chapter 11 relief, electing protection under the small business debtor provisions of the bankruptcy code.  Debtor believes it qualifies as  small business debtor under 11 U.S.C. § 101(51C) insofar as it accumulated its debt while engaged in commercial or business activities (other than primarily owning or operating real property) and has total non-contingent liquidated secured and unsecured debts owed to non-insider parties under the statutory debt limits.  Because it filed  its case as a small business debtor case,  the U.S. Trustee has not appointed a creditors' committee to provide oversight and the Debtor remains in possession of its property.

When it filed its case, Debtor attached the most recently prepared balance sheet, statement of operations, cash-flow statement and most recently filed tax return to the petition.  Creditors have access to those documents as such are public record and can be retrieved at www.pacer.gov. Debtor has filed postpetition and until closure of the case will continue to file periodic reports as required in 11 U.S.C. §308, all of which are available to the public at www.pacer.gov, and include information about Debtor's profitability, reasonable approximations of its projected cash receipts and cash disbursements over a reasonable period, comparisons of actual cash receipts and disbursements with projections in prior reports, and whether it is (a) in compliance in all material respects with postpetition requirements imposed by this title and the Federal Rules of Bankruptcy Procedure; and (b) timely filing tax returns and other required government filings and paying taxes and other administrative expenses when due.

Pursuant to the Code, Debtor has filed this Plan setting forth the background of its filing, its past and current financial position, projection of its future ability to pay creditors and its repayment plan.  Creditors' rights may be affected by this Plan. Claims may be reduced, modified, or eliminated.  Debtor submits the Plan contains adequate information for Creditors to make an informed decision in exercising their right to vote for the acceptance of the Plan and to comprehend the proposed treatment of Creditors and their allowed claims upon confirmation.

Creditors should read this plan carefully and discuss it with their attorney. Creditors who do not have an attorney  may wish to consult with one.  Failure to object may constitute an implied acceptance of and consent to the relief requested in this document, which acts as a new binding contract upon the Debtor and its Creditors, replacing any previous agreements between the parties.

Creditors opposing this Plan's treatment of their claims or any provision of this Plan, must file a timely objection to Confirmation. To determine the deadline to object to this Plan, Creditors must consult the Notice of Bankruptcy Case or applicable Notice/Motion served with this Plan. The Court may confirm this Plan without further notice if no objection to Confirmation is filed. In addition, Creditors must file a timely proof of claim in order to be paid unless set forth herein and scheduled as undisputed, noncontingent and unliquidated. Confirmation of this Plan does not bar a party in interest from objecting to a claim.

## II.  DEFINITIONS

The meaning of terms not defined herein may be found in 11 USC § 101, et. seq.  The following words, terms and definitions shall be used and apply specifically to this Plan:

a.        Allowed  Claim  shall  mean  each Creditor's claim or claim of interest that is accepted by the Debtor or the court as valid for payment.  Creditors must file a proof of claim with the Clerk of Court[1] for their claim to be allowed, unless otherwise provided by law or this Plan. Some claims by law can be approved only by the court for payment.  The Debtor retains the ability to object to claims regardless of confirmation of the Plan and claims treated in the Plan will be paid only to the extent they are allowed by the Court.  This Plan provides for payment of a specific dollar amount to creditors.

b.        The Case shall mean this proceeding under Chapter 11, Case No.  20-02780-dd which commenced as a voluntary petition in this Court on July 2, 2020.

c.        Chapter 7 shall mean a hypothetical case is administered under 11 U.S.C. Sections 701 et seq., wherein an estate, identical to this Debtor, with identical assets and liabilities, has its assets liquidated.

d.        Chapter 11 shall mean a case being administered under 11 U.S.C. Sections 1101 et seq. with  particular emphasis on sections 1181-1195.

e.        Class of Claims shall mean all types of claims or interests (i.e., secured, priority, unsecured or interests), which are substantially identical in kind or nature and are grouped together without any unfair discrimination or treatment for payment by this Plan.  Because of the small number of creditors, and the separate nature of each claim, each creditor in this Plan is treated in a separate class.

f.        The Code is 11 U.S.C. Sections 101, et seq., the "Bankruptcy Code".

g.        Confirmation of this Plan shall be effective when the signed Order Confirming Plan is

entered by the Court, after the Court has found that the Plan meets the requirements of §1191 of the Code.

    h.     <u>Court</u> shall mean the United States Bankruptcy Court for the District of South Carolina.

    i.     <u>Creditor</u> shall mean the holder of an Allowed Claim for payment.

    j.     <u>Debtor</u> shall mean The Windermere Club, LLC.

    k.     <u>Effective</u> <u>Date</u> shall mean Confirmation.

    l.     <u>Impairment</u> is defined in 11 U.S.C. §1124 and in summary means the terms of payment have changed, typically adversely. Various classes under the Plan as set forth below, are shown to be impaired. Impairment is defined in 11 U.S.C. §1124.

    m.     Petition Date is the date Debtor filed bankruptcy, July 2, 2020.

    n.     <u>Plan</u> shall mean this Plan of Reorganization as may be amended and confirmed.

    o.     <u>Priority and Administrative Claims</u> shall mean all claims entitled to priority status under 11 U.S.C. § 507 and § 364 or other specific provisions of the Code.

    p.     <u>Secured</u> <u>Claim</u> shall mean each individual claim completely or partially secured by collateral entitled to secured status under Title 36 of the Code of Laws of South Carolina (UCC provisions) or South Carolina law.

    q.     <u>Unsecured</u> <u>Claims</u> shall mean all claims against the Debtors other than secured claims, priority and administrative claims, or claims of interest, including unperfected claims.

THE PLAN HAS BEEN PREPARED BY THE DEBTOR BASED ON INFORMATION AVAILABLE TO IT.  NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE ASSETS OF THE DEBTORS) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS  PLAN. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED IS WITHOUT ANY INACCURACY.

### III. BACKGROUND

Fairways Development, LLC is a SC LLC owned 51.130% by United Financial Corporation, 21.07% by Winmar Corporation, 17.8% by Elizabeth Bakhaus, 2% by Alan Bakhaus, 2% by Katherine

---

[1] http://www.scb.uscourts.gov/electronic-filing-claims

Bakhaus, 2% by John Bakhaus, Jr, 2% Elizabeth CT Bakhous John Bakhaus Custodian, and 2% by Emily Bakhaus. Fairways Development, LLC is in the business of land acquisition and sales. For example, it owns the golf course to be discussed below as well as commercial office space in Lexington, Kentucky. Fairways Development, LLC owns other businesses such as owning 95% of Plantation Homes, LLC, 50% of Anthony Fairways General Partnership and 50% of Willow Lake Holdings, LLC. Debtor is a wholly owned subsidiary of Fairways Development, LLC. The Windermere Club owns a golf course club house adjacent to both the tennis and swim facilities and also the golf course owned by Fairways Development, LLC. The Windermere Club takes in all of the revenue for the facilities.

The clubhouse owned by The Windermere Club sits on 3.86 acres of land. The Windermere Club serves typical golf course food such as take out hot dogs as well as other short order and snack food and the food provides approximately 15% of the Debtor's revenue. It has clothing for sale. The tennis club owned by Fairways Development, LLC has a fitness center, 6 outdoor clay courts, 2 hard outdoor courts and 4 indoor courts for member use only. Fairways Development, LLC also has a pool for member use, however the pool loses money. Tennis and swim privileges are exclusive to members and summer only memberships are available. The golf course owned by Fairways Development, LLC is the only Pete Dye designed course in the Midlands area and contains 18 holes, all with at least 5 tee boxes and is open to member and public play. Approximately 60% of golf revenue comes from public play. Overall, golf makes up at least 80% of the revenue. The Debtor needs about 1600 rounds of golf each month to break even, all of which are recorded on a POS computer system.

The development of LongCreek Plantation began in 1981, when Fairways Development, LLC was able to purchase a beautiful piece of real property, northeast of Columbia, South Carolina just off of the interstate leading to Charlotte, North Carolina. Soon thereafter, home interest rates skyrocketed upward into the 14%-22% range stunting home sales. Home sales in the community finally began to pick up in 1985-86, and at that time Fairways Development, LLC decided to build a golf course with surrounding home sites. The golf course named The Windermere Club was completed and opened in 1987. Land development and lot sales progressed nicely over the next 20 years.

In 2001, Fairways Development, LLC formed The Windermere Club, LLC, a South Carolina LLC with John Bakhaus as the registered agent. The Windermere Club, LLC was stable, but required some amount of subsidy from the development company. Everything worked according to plan until the recession of 2008. Fairways Development, LLC was completing the development of two new sections of

high end lots, and had almost a million dollars in lot sale contracts.  After that crash, not one of those lot sales closed.

Nevertheless, over the next couple of years, Fairways Development, LLC was able to pay off or refinance all of the development debt, but almost all lot sales and homebuilding stopped for the next 4 years.  In 2013, The Windermere Club, LLC refinanced into a two year interest only loan with First Palmetto Bank in the amount of $1,290,000 secured by the clubhouse, golf course property owned by Fairways Development, LLC, and undeveloped subdivision land known then as Club Colony.   The original loan from 10 years earlier, was for approximately $2,200,000.. Prior to foreclosure, the principal balance had been paid down to $875,000.

The recession of 2008 unfortunately sent the golf industry into a tailspin that still plagued the industry through 2019.  The Windermere Club was likewise affected, losing over half of its membership.  With the decline in home sales, there was no revenue from the development side of the business to subsidize the golf operations.  First Palmetto Bank began foreclosure proceedings.

With no money to spare, The Windermere Club, LLC needed a large loan or investor, however The Windermere Club, LLC had no selling points. One of the conditions adversely affecting The Windermere Club, LLC was the poor summertime and early fall conditions of its greens.  The bent grass, which was specified by course designer Pete Dye, is a northern grass and almost impossible to grow in one of the hottest cities in the Southeast.  Players noticed the conditions, which hurt the course's reputation for playability and drove away non-member golfers. Although not having money to spare, The Windermere Club, LLC made the risky decision in early June of 2019, with some financial help from its members, to convert to Champion's Dwarf Bermuda grass.  The Windermere Club, LLC closed the course July 5, 2019, to start the greens renovation and re-opened in late October.  When the grass started growing again in 2020, the difference was startling.  By June, 2020, The Windermere Club, LLC's greens were considered the best in the Midlands.

The condition of the new greens, coupled with the surge in golf play, which was stimulated by the Coronavirus, has put Windermere back on the list of best places to play in the Midlands.  The Windermere Club, LLC has welcomed new guests and repeat customers from the Midlands, and many other towns around South Carolina.  Players are even driving from Charlotte due to course conditions and competitive pricing worth the drive. The building of the strong reputation leads every reason to believe that this strong support of The Windermere Club, LLC will outlive Coronavirus.  Windermere keeps 100% of the revenue coming in from the members and guests rather than paying revenue to Fairways

Development, LLC for rent or use of facilities.  In fact, in the past, Fairways Development, LLC has had to supplement the income of the Debtor.

Since April 2020, the Club has hit operational breakeven or better. The Windermere Club, LLC expects positive cash flow to increase as time passes because of this new loyal group of customers and a course worthy of  increasing prices.  Memberships range from $19.99 / month for fitness only memberships to $195.00 / month. Members, depending on their membership level pay between $13-20 for their cart rental fee depending on rounds played and membership levels. The higher price point memberships offer unlimited tee-times, charging cart fees only, while other lower cost memberships offer between 3-5 rounds of golf per month. Individual rounds of golf cost $35 on weekdays and $45 on weekends (including cart and greens fees). Non-member senior rates are slightly lower at $32 for weekdays and $35 for weekends  The Windermere Club, LLC hosts tournament play and offers golf lessons to supplement greens fees.

The above factors, coupled with the sale of some of the remaining development land owned by Fairways Development, LLC, will enable The Windermere Club, LLC to reorganize, through  settlement of its debt  and payment over time of its restructured financial obligations.

### IV. FINANCIAL CONDITION OF THE DEBTOR

As part of the bankruptcy case, Debtor filed bankruptcy schedules, a copy of which can be retrieved at www.pacer.gov.  Debtor has been exceeding its financial projections. For example, when Debtor filed the case, it projected $86,333 in monthly income and $71,436 in monthly expenses on its bankruptcy Schedule I before paying leases and contracts, yielding a projected monthly net revenue of $14,897.  Upon filing, Debtor revised that projection to be a little more conservative, estimating $80,000 in monthly revenue and $74,729 in monthly expenses, yielding a monthly net cash flow of only $5,271, however, Debtor exceeded both projections, coming in at $27,380.85 net for the month of July.



|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 80,000.00 | − | $ 108,443.36 | = | $ 28,443.36 |
| 33. **Cash disbursements** | $ 74,729.00 | − | $ 81,062.51 | = | $ 6,333.51 |
| 34. **Net cash flow** | $ 5,271.00 | − | $ 27,380.85 | = | $ 22,109.85 |

As shown from its Amended August Monthly Operating Report the Debtor brought in more cash receipts than projected, despite an increase in expenditures that are once a year expenditures, and anticipates similar revenue in September 2020, with fewer expenses in September.



Debtor has attached its 2 year projected *pro forma* as **EXHIBIT A**, showing an average monthly net income to be $13,542.66 for 2021, and $18,666.36 for 2022. Debtor realizes it will encounter rainy or cold months limiting play, resulting in decreased net revenue. The proposed Plan payment is conservative. If Debtor has excess proceeds, it intends to pay off debt faster than set forth herein.. The proposed plan payments set forth in Section VII requires a monthly payment of $12,539.18.

Below is the detail of the plan requirements. Debtor believes it will be able to meet the requirements through its operating revenue. Debtor has been able to pay its postpetition operating expenses and have money left over to pay the required plan payment. Most of its vendors continue to transact business with the Debtor although on a COD basis, and Debtor has remained current postpetition. The bankruptcy has given the Debtor time to reorganize and plan for repayment of prepetition debt in addition to paying its normal operating expenses.

| CLASS | CREDITOR | MONTHLY PAYMENT |
|-------|----------|-----------------|
| 1 | PROFESSIONAL FEES | $1,000 |
| 2 | FIRST PALMETTO BANK | No set monthly payment |
| 3 | POA | $ 100 |
| 4 | US FOODS | $ 245.92 |

| 5 | UNITED LEASING | $0 (UNIMPAIRED) |
|---|---|---|
| 6 | YAMAHA | $0 (UNIMPAIRED) |
| 7 | MEMBERS | $0 (UNIMPAIRED) |
| 8 | IRS (secured claim) | $3,822.09 |
| 9 | IRS (priority) | $3,786.70 |
| 10 | SCDOR (priority) | $105.66 |
| 11 | RICHLAND CO TREASURER | $1,426.27 |
| 12 | SOUTH STATE BANK | $0 (UNIMPAIRED) |
| 13 | EMPLOYEES | $0 (UNIMPAIRED) |
| 14 | UNSECURED | $2,052.54 |
| 15 | INSIDER CLAIMS | $0 |
| 16 | NOTICE ONLY | $0 (UNIMPAIRED) |
| | **Total Monthly Payout** | **$12,539.18** |

Debtor anticipates income sufficient to fund the proposed plan as set forth herein pursuant to 11 U.S.C. §1194.

## V.  ASSETS AND DEBTS

Debtor has the assets listed on Schedules A and B of its  bankruptcy schedules and believes the values stated therein are correct.  The known liens on the collateral are  listed on Schedule D in the amount stated therein with the liens listed on Schedule D unless a claim has been filed. If a claim has been filed, the amount of the claim will be allowed unless Debtor files an objection and the court sustains the objection.  Claims can be viewed at www.pacer.gov. The liens are secured by real estate and personal property as further set forth on bankruptcy Schedule D and filed claims. After having pulled a UCC search, Debtor believes no one has an existing lien on cash collateral.  Property of the estate shall include continued earnings and accumulation of assets during the years Debtor is in  bankruptcy. During that time, Debtor shall remain in possession of all property of the estate.

Fairways Development, the 100% owner of Debtor, intends to redeem or appeal the tax assessments of the tennis club and swimming facilities and cure the tax liabilities owed to Richland County prior to the deadline to do so in order to maintain use of the amenities for members.  Fairways

Development, LLC also intends to market and sell specific lots owned by it  to assist the funding of the
Debtor's Plan for any obligations that cannot be paid through regular operating expenses.  Debtor and
Fairways Development, LLC are in talks with the POA about provisions affecting lake property owned by
Fairways Development.  Although Debtor does not need the lake, Fairways Development uses the water
from the lake to water the golf course.  DHEC is requiring a $20,000 study be performed.  Debtor and
Fairways Development, LLC oppose the study.  The POA has agreed to pay for the study if the lake is
turned over to it.  Debtor and Fairways Development continue to talk with the POA about a compromise.

## VI. LIQUIDATION ANALYSIS

Debtor listed assets on bankruptcy Schedules A and B and secured debts on Schedule D.  The
amount of unexempt equity is $0 as summarized in the chart below which is the amount Debtor believes
creditors should expect to share if the assets were liquidated:

| Asset | Value | Liens on Property | Net Equity |
|---|---|---|---|
| 1101 Longtown Road E | $ 750,000.00 | $ (1,414,493.77) | $ - |
| greens affixed to course owned by Fairways* | $ unknown | $ (441,218.86) | $ - |
| BB&T acct 1609 | $ 16,098.00 | $ (441,218.86) | $ - |
| BoA acct. 0434 | $ 5,437.00 | $ (441,218.86) | $ - |
| South State acct. 5043 | $ 18,234.16 | $ (441,218.86) | $ - |
| BoA acct. 4957 | $ 29.00 | $ (441,218.86) | $ - |
| Security Deposits (Palmetto Utilities & Dominion) | $ - | $ (441,218.86) | $ - |
| Prepaid member dues | $ 9,378.00 | $ (441,218.86) | $ - |
| A/R 90 days or less | $ 21,623.24 | $ (441,218.86) | $ - |
| A/R 90 days or more | $ 7,181.72 | $ (441,218.86) | $ - |
| clothing, balls, counter sale food & bar stock | $ 1,500.00 | $ (441,218.86) | $ - |
| perishable foods | $ 1,299.00 | $ (441,218.86) | $ - |
| office furniture | $ 13,500.00 | $ (441,218.86) | $ - |
| office fixtures | $ 22,500.00 | $ (441,218.86) | $ - |
| 24 QTY club car golf carts | $ 52,800.00 | $ (441,218.86) | $ - |
| Leased Matrix Fitness Equipment | $ - | $ (504,386.21) | $ - |
| line 47 Sch A/B Golf course maintenance equipment | $ 41,500.00 | $ (441,218.86) | $ - |
| line 47  SchA/V golf course maintenance cars | $ 7,450.00 | $ (441,218.86) | $ - |
| leased 55 Yamaha golf carts | $ - | $ (514,588.86) | $ - |
| website | $ - | $ - | $ - |
| alcoholic beverage licenses | $ - | $ - | $ - |
| customer list | $ - | $ - | $ - |

| | | | | | | |
|---|---|---|---|---|---|---|
| goodwill | $ | 25,000.00 | $ | (441,218.86) | $ | - |
| commercial insurance | $ | - | $ | - | $ | - |
| workers comp insurance | $ | - | $ | (441,218.86) | $ | - |
| potential breach of contract suit | $ | - | $ | (441,218.86) | $ | - |
| ***Totals Equity*** | | | | | **$** | **-** |

*Greens cost $100,000 but would be difficult to sell as they are affixed to the property owned by Fairways Development.

Unsecured creditors will be paid at least the amount of unexempt equity, representing the amount unsecured creditors would receive in a hypothetical Chapter 7 case.  Debtor believes its known creditors would receive less than 1% in a Chapter 7 case, as the assets appear to be fully encumbered by consensual and nonconsensual liens.  Despite the low liquidation percentage, Debtor intends to pay 75% to its unsecured general non priority creditors as set forth below.

Secured creditors will be paid at least the value of the debt.  Debtor's plan does not surrender collateral securing debt. Creditors who are undersecured may be able to participate in the Plan distribution both as a secured and unsecured creditor.  Leases and contracts will be dealt with as provided below.

## VII.    PROPOSED PLAN

NOTE TO ALL CREDITORS:  THE LISTING OF THE CREDITORS OF THE DEBTOR IN THE SCHEDULES OR PLAN OF REORGANIZATION DOES NOT CREATE AN ALLOWED CLAIM.  THE DEBTOR RETAINS THE RIGHT TO OBJECT TO ANY AND ALL CLAIMS FOR ONE HUNDRED TWENTY  (120) DAYS AFTER CONFIRMATION AND RATHER THAN OBJECTING TO THE CLAIM MAY ALTER THE TREATMENT OF PAYMENT OF THE CLAIM, INCLUDING PAYMENT IN PART SUCH AS THROUGH VALUATION, BY THE PLAN PROVISIONS.  IF THE DEBTORS FILE AN OBJECTION, A HEARING MAY BE HELD BY THE COURT AND THE COURT WILL MAKE THE DETERMINATION AS TO WHETHER AND IN WHAT AMOUNT THE CLAIM IS ALLOWED.  ONLY THOSE CREDITORS LISTED HEREIN HAVING EITHER AN ALLOWED CLAIM OR CLAIM LISTED AS UNLIQUIDATED, UNDISPUTED AND NONCONTINGENT ON SCHEDULES D, E, OR F WILL BE PAID.  THE PLAN SHALL GOVERN THE AMOUNT AND TERMS PAID.  THE LIENS SHALL BE SATISFIED WHEN

THE TERMS OF THE PLAN HAVE BEEN MET. IT SHALL BE THE CREDITOR'S RESPONSIBILITY TO SATISFY THE LIEN PROMPTLY.

ALL PARTIES IN INTEREST AND CREDITORS ARE URGED TO PAY CLOSE ATTENTION TO THE LIEN PRIORITY AND LISTED COLLATERAL AS NEITHER THE COUNSEL FOR THE DEBTORS NOR DO THE DEBTORS GUARANTEE THE ACCURACY OF THE GIVEN INFORMATION.  UPON CONFIRMATION, THE REPAYMENT SCHEME SHALL BE A BINDING CONTRACT BETWEEN THE CREDITORS AND THE DEBTORS.  CREDITORS SHOULD CONTACT THEIR ATTORNEY IF THEY DISAGREE WITH THE TREATMENT SET FORTH BELOW.

CLASS NUMBER 1:   This class consists of all **administrative priority expenses** incurred during this case and includes trustee fees, professional fees and expenses and any and all taxes incurred during the administration of this estate.   These accountant fees are current and will continue to be paid from cash flow or from retainer when they are due.  Currently, Counsel for the Debtor has $23,305 being held but has billed almost $35,000 to date postpetition. Upon approval of the fee application, Debtor will pay Counsel's remaining fees at no less than $500 per month until paid in full. Debtor will pay  the Trustee a lump sum payment of $10,000 on  the later of after confirmation or when the court enters an order approving Trustee fees, and the remainder paid at $500 per month, capped at a total Trustee's billing of $15,000.  The Trustee will be relieved of his duties upon substantial consummation of the plan. This class is <u>unimpaired</u>.

CLASS NUMBER 2:      This class consists of the secured loan of **First Palmetto Bank**, which holds first priority lien on the real property located at 1101 Longtown Road E, Blythewood, SC.  This creditor filed its claim on August 28, 2020 in the amount of $1,000,084.17 and amended it on September 8, 2020 due to a clerical error.  The co-debtor on this loan believes it has an investor to pay out this loan over time. Fairways Development, LLC has committed the funds to the Debtor or will pay directly, being the co-debtor. This class shall be paid in full within twenty four (24) months of the Effective Date either by funds from an investor, sale of assets or refinancing the loan. $500,000 shall be paid by December 31, 2020 with an additional $100,000 being paid toward principal no later than December 31, 2021 and the remainder of the debt to be paid by December 31, 2022.  Contractual interest at an annual rate of 5.5% shall continue to accrue.  Although undersecured as to this Debtor, because this loan is also secured by real estate owned by Fairways Development, LLC, this class is oversecured and is not prejudiced by awaiting the payoff. This class is secured, <u>impaired.</u>

CLASS NUMBER 3:    This class consists of the secured debt of **Longcreek Plantation POA**, arising from unpaid property owner association dues.  This class filed a claim on September 10, 2020 in the amount of $1,136.10.  The claim covers yearly dues for property owners, which run $137.80 per year. This class shall have an allowed claim in the amount in the amount of $1,136.10 and be paid this amount with no interest within 12 months of the Effective Date by monthly  payments of $100 per month with payments to commence upon the Effective Date and being due monthly at any time of each month thereafter until paid in full.  This class is secured, <u>impaired.</u>

CLASS NUMBER 4:    This class consists of the secured claim of **US Foods, Inc.**.  This class has not filed a claim. From speaking with this class, Debtor believes the total amount owed is $2,861.19. This class shall have an allowed secured claim in the amount of $2,861.19. Debtor shall pay this claim in full at 5.75% annual interest over a period of 12 months from the Effective Date of the plan at a monthly payment amount of $245.92 per month. Payments shall commence upon the Effective Date of the Plan. This class already released its lien but is being paid as secured based on a consensual agreement inducing this class to terminate its UCC filing.  This class is secured, <u>impaired.</u>

CLASS NUMBER 5:    This class consists of the two leases held by **United Leasing** pertaining to Matrix Fitness Equipment used in the fitness facility that Fairways Development owns.  Upon investigation and speaking with this class, the debt does not belong to the Debtor and will not be paid in the Plan.  Instead, this is debt of Fairways Development, LLC.  Debtor believes Fairways Development, LLC has a payment plan in place to cure the arrearage.  This class is <u>unimpaired.</u>

 CLASS NUMBER 6:  This class consists of the lease of **Yamaha Motor Finance Corp.** pertaining to the lease of 55 Yamaha golf carts.  This class filed a claim on September 8, 2020 revealing Debtor does not owe this debt. This creditor will not be paid through the plan.  Rather the debt appears to be a debt owed by Fairways Development, LLC. This class is un<u>impaired.</u>

CLASS NUMBER 7:    This class consists of pre-petition **Members,** who hold executory contracts with the Debtor**.**  Debtor believes that this class is unimpaired by the bankruptcy proceeding and intends to honor all pre-petition memberships. Because Debtor proposes no changes to the memberships, it does not believe members are adversely affected and they will get no disbursement under the plan. This class is <u>unimpaired</u>.

CLASS NUMBER 8:    This class consists of the secured claim of the **Internal Revenue Service**. This class filed its claim on July 21, 2020 in the secured amount of $429,049.47 asserting a lien on Debtor's real and personal property. Debtor's real property is fully encumbered by the first mortgage,

leaving up to $243,530.12 in equity in the personal property owned by Debtor. This class shall be allowed in the amount of $243,530.12.  Unless otherwise agreed to later as an offer in compromise for example, Debtor shall pay the value of $243,530.12 as secured, with the remaining $185,519.35 to be added to the unsecured priority taxes treated in class 9. Debtor believes the valued claim breaks out so that $116,461.55 attributable to non-trust fund portion of the 2015 and 2016 taxes, which can be paid over seven (7) years at a 3% fixed rate of interest, for an average monthly payment of $1,538.84 with the remaining $127,068.37 of the secured portion shall be paid out over five (5) years at an average monthly payment of $2,283.25 including a fixed 3% annual rate of interest. These liens shall be released upon payment of the debt. This class is secured, **impaired.**

CLASS NUMBER 9:   This class consists of the priority taxes owed to the **Internal Revenue Service.**  This class filed its claim on July 21, 2020 and asserted it was owed $25,219.42 in priority unsecured taxes. This class consists of the unsecured priority claim of $25,219.42 and the valued portion of an estimated $185,519.35 from Class 8, for a total amount of  $210,738.77. Unless otherwise agreed to later as an offer in compromise for example, the priority portion of the shall be paid to this class in the total amount of $210,738.77 over a period of five years from the Petition Date with an annual 3% fixed rate of interest with the assistance of Fairways Development, LLC, with the balance changing if the Allowed Claim amount changes.  Debtor anticipates making monthly payments each in the amount of $3,786.70 until paid in full but paid in no more than 60 months from the Petition Date. Because much of Debtor's debt will be paid in three years or less, this class may receive less than $3,786.70 monthly in years 1-3 and more than $3,786.70 in years 4-5. This class is priority, impaired.

CLASS NUMBER 10: This class consists of the priority claim of the **South Carolina Department of Revenue**. In its amended its claim filed on September 29, 2020 this class asserted a priority claim of $6,339.14 This class shall be paid with no interest within five years of the date of filing of this case in by payments of $105.66 to commence on the Effective Date and continue monthly until paid in full. If paid by the end of the year, penalties shall be waived. If not, the remaining $1,960.60 of the claim was filed as general unsecured and will be paid in Class 14. Class 10  is priority, impaired.

CLASS NUMBER 11: This class consists of the priority claim of the **Richland County Treasurer.** This creditor filed its amended claim on September 18, 2020 in the amount of $85,575.72. Debtor shall pay this amount through the sale, refinancing or obtaining of an investor on the real property, or paid with no interest over a period of 60 months,  paying a sum amounting to 20% of $85,575.72 by August 31, 2021 and due annually until paid in full. This class is impaired.

CLASS NUMBER 12:  This class consists of **South State Bank**, which provided an unsecured PPP loan to the Debtor.  This class filed a claim on August 10, 2020 in the amount of $72,188.  Debtor will repay this loan as contractually obligated, believing it ultimately will be forgiven.  This class is <u>unimpaired.</u>

CLASS NUMBER 13:  This class consists of the **Employees** of Debtor set forth on schedules E/F. Debtor believes all pre-petition payroll has been paid postpetition and is unaware of any unpaid pre-petition wages owed to any employee. Because this class has been paid, no distributions will be made under the plan. This class is <u>unimpaired.</u>

CLASS NUMBER 14:  This class consists of known **undisputed, general non priority unsecured claims**. Debtors believe the total debt owed to this class is $98,521.87 General unsecured creditors are expected to   receive 75% of their Allowed Claims over a period of 36 months after confirmation as set forth below, resulting in a monthly payment of $2,052.54 to this Class. Debtor may pre-pay the claims or pay over time.  Debtor may object to the claims.

| Creditor Name | balance | 75% | monthly amount |
|---|---|---|---|
| 1-2-1 Marketing | $ 1,071.00 | $ 803.25 | $ 22.31 |
| Adidas | $ 3,000.00 | $ 2,250.00 | $ 62.50 |
| Amer Sports | $ 2,128.76 | $ 1,596.57 | $ 44.35 |
| Barnhills PortoJohn Service | $ 250.00 | $ 187.50 | $ 5.21 |
| Blanchard Machinery Company | $ 582.09 | $ 436.57 | $ 12.13 |
| Blythewood Oil Company | $ 8,199.00 | $ 6,149.25 | $ 170.81 |
| Callaway | $ 3,576.19 | $ 2,682.14 | $ 74.50 |
| Champion Turf Farms | $ 20,312.50 | $ 15,234.38 | $ 423.18 |
| City of Columbia | $ 1,563.56 | $ 1,172.67 | $ 32.57 |
| Dominion | $ 12,064.82 | $ 9,048.62 | $ 251.35 |
| E&D Enterprises | $ 240.00 | $ 180.00 | $ 5.00 |
| Econobug | $ 250.00 | $ 187.50 | $ 5.21 |
| Gamma Sports | $ 1,734.76 | $ 1,301.07 | $ 36.14 |
| Golf Associates Scorecard Company | $ 690.00 | $ 517.50 | $ 14.38 |
| Golf Association Services | $ 792.00 | $ 594.00 | $ 16.50 |
| Iheart Radio | $ 2,948.00 | $ 2,211.00 | $ 61.42 |
| IRS (unsecured) | $ 2,301.27 | $ 1,725.95 | $ 47.94 |
| Palmetto Utilities | $ 6,687.05 | $ 5,015.29 | $ 139.31 |
| Smith Turf & Irrigation | $ 13,992.99 | $ 10,494.74 | $ 291.52 |
| SCDOR unsecured | $ 1,960.60 | $ 1,470.45 | $ 40.85 |
| SCDEW | $ 9,700.00 | $ 7,275.00 | $ 202.08 |
| Spectrum | $ 606.09 | $ 454.57 | $ 12.63 |

| | | | | | |
|---|---|---|---|---|---|
| Spectrum | $ | 352.32 | $ | 264.24 | $ | 7.34 |
| Town Talk | $ | 518.87 | $ | 389.15 | $ | 10.81 |
| Workers Compensation Commission | $ | 3,000.00 | $ | 2,250.00 | $ | 62.50 |
| | $ | 98,521.87 | | | $ | 2,052.54 |

Currently, the chart lists the amount of the claim or scheduled amount, whichever is higher, but ultimately, the Allowed Claim could differ. This class is unsecured, <u>impaired</u>. No creditors asserting an unsecured claim will be paid other than those listed above.

CLASS NUMBER 15:  This class consists of the **Insider Loans** to **Fairways Development, LLC, John T. Bakhaus and Winmar Corporation.**  These are insider parties will not be paid because the unsecured class is not being paid in full.

CLASS NUMBER 16:  This class consists of the following **interested or disputed parties** who are noted on the schedules as either notice only or disputed.

Ahead, LLC
American Materials Company, LLC
Bank of America
Bridgestone Golf, Inc.
Club Prophet Systems
Divots Sportswear
Easy Picker Golf Products, Inc.
Epoch Eyewear Milner Sports, LLC
Ewing Irrigation Products, Inc.
Golf Cars of Columbia, LLC
Peter Candela
ProTag America
R&R Products
SiteOne Landscape Supply
Smith & Jones
Sterling Sand
Tri State Pump & Control
Willie Baker

Debtor does not believe it owes money to these interested parties and as such they will not be receive a disbursement through the plan, yet may receive payment through insurance if available. Creditors in this class will not have a vote unless they timely file an Allowed Claim as a participant in another class of creditors. This class is <u>unimpaired</u>.

16

In the event Debtor pays off the plan or any class early, or pay faster than proposed herein, there shall be no prepayment penalty.

## VIII.    TAX IMPLICATIONS

Debtor has considered the tax implications of this Plan with  its tax preparer or accountant and believes the tax implications will not hinder the Debtor's ability to comply with its obligation to make payments to its creditors.

## IX. LITIGATION

At the time the Petition was filed, the Debtors had the following litigation and claims as set forth on their Schedules and Statement of Financial Affairs:

- *First Palmetto Bank vs. The Windermere Club, LLC a/k/a Windermere Golf and Country Club, John T. Bakhaus, Fairways Development, LLC, Bank of America National Association, South Carolina Department of Revenue, United States of America through its Agency, Internal Revenue Service, Longcreek Plantaion Property Owners Association, Inc. and Club Colony Community Association, Inc.,* C/A 2019 CP 4002305 in Richland County Court of Common Pleas. Upon information and belief, this proceeding was stayed upon the filing of the bankruptcy case.  It was a foreclosure action and the underlying debt shall be addressed in the plan. This debt is treated in Class 2.
- *Willie Baker vs. The Windermere Club* WCC file no. 2003288 pending with the Workers Compensation Commission. Upon information and belief this matter has been stayed by the bankruptcy proceeding and will be treated in Class 16.
- As indicated on Debtor's schedules, Debtor believes it may have a claim against L&J Acquisitions, LLC for breach of contract/fraudulent actions stemming from a sale contract from 2019. Debtor has not yet commenced an action and does not intend to at this time.

Debtor  does not believe there are any judgments against itself to address in the Plan.  Debtor is unaware of any post-petition claims that have arisen and have no intention to sue.

## X.  CLAIMS OBJECTIONS

As of the date of the filing of this plan Debtor has not objected to any claims.  If Richland County does not amend its claim due to a reassessment of the real estate, Debtor may object to its claim.  Debtor intends to object to the claim of Yamaha Motor Finance Corp. for the reason the lease is not between Yamaha Motor Finance Corp. and the Debtor. The Debtor may file claims objections within 120 days after Confirmation or pay the claimed or scheduled amount as set forth in the Plan.

## XI. FEASIBILTY OF PROPOSED PLAN OF REORGANIZATION

The Bankruptcy Code requires that in order for a plan to be confirmed, Debtor must  demonstrate that the plan is not likely to be followed by a liquidation or the need for further reorganization of the Debtor, unless such liquidation or reorganization is proposed in the plan.   Debtor expects approximately $20,000 in net monthly revenue in addition to money contributed by Fairways Development, LLC. Debtor proposes to pay its disposable income into the Chapter 11 plan, which would not be required if they had filed a case under Chapter 7. The Debtor believes creditors would receive more because of the size of the unsecured debt and the extent of liens if the Debtor proposes a repayment plan under Chapter 11 than under a proposed liquidation in a Chapter 7 case.  Debtor believes the case would be a no asset Chapter 7 case with no distributions to creditors.  Debtor believes in Chapter 11 all unsecured creditors, would receive more by continued operation of the business than by liquidation.

## XII.    STATUS OF THE DEBTORS AFTER CONFIRMATION

After confirmation of this Plan, the assets of the reorganized Debtor shall consist of substantially the same assets as exist on the date of this Plan.  The equity position will remain the same in all assets, , however it is for sale if anyone wants to offer to purchase the Debtor's interest.

Debtor received an offer of $3,245,000 to purchase the club and additional property owned by Fairways Development, however Debtor declined the offer because it did not pay enough to cover the necessary debts. Furthermore, the proposal included sale of property owned by Fairways Development, which opposed the sale.

Debtor has 16 employees.  Debtor does not expect any employment change.  Since the filing of the bankruptcy, Debtor has remained current on payroll and tax obligations.   John Bakhaus is the managing member of Fairways Development, LLC and will continue to manage The Windermere Club postconfirmation unless someone makes a genuine market offer to buy the assets of the Debtor which is

accepted.  Insiders were not receiving benefits such as cell phones, insurance or other perks, and they will not while the Debtor reorganizes.

Any defaults, contracts, judgments or other indebtedness  whatsoever, with respect to any such indebtedness or obligations,  or in the terms and conditions thereof,  which are  or  may  be  based  on events,  facts  or occurrences taken place on or before the date of confirmation, or which could have taken place or be deemed to take place on or before such date shall be deemed to have been waived and shall not thereafter be a basis for the exercise by any person for any right or remedy whatsoever, as a creditor or claimant against the Debtor except as set forth in this Plan.

From and after confirmation of this Plan, the Debtor is exonerated from any and all prepetition claims other than set forth in this Plan.  The Debtor will, from and after Confirmation of this Plan, be indebted for, and obligated to pay, only those liabilities and obligations set forth in the Plan or by court order, and only those that have been allowed or modified pursuant to this Plan, or pursuant to claims objections filed and determined subsequent to Confirmation of this Plan.  The Debtor retains the right to object to claims subsequent to Confirmation.

The Debtor shall retain full power after Confirmation to prosecute and defend any causes of action or proceedings by or against it, or resulting from the administration of the estate of the Debtor or resulting from any other claim by or against the Debtor or its assets, or arising prior to or existing before Confirmation, including collection of outstanding accounts receivable.  Actions stayed by the bankruptcy will not be revived but rather paid through the plan with any default being actionable as breach of contract of the terms of the confirmed Plan. Violations by creditors attempting to act in contravention to the terms of the confirmed Plan will be treated as a breach of contract in addition to any applicable laws including bankruptcy laws and subject to penalties for such violations as well as at least $2,500 in attorneys fees for litigation.  Actions may be brought in this court, federal court, state court or magistrate's court.

Debtor may use the services of its professionals in the prosecution or defense of such claims, and shall have full power, subject to the approval of  the court, to employ, retain and replace  special  counsel to  represent it in the prosecution  or defense of any action, and to discontinue, compromise, or settle any action or proceeding, or adjust any claim.  Professionals employed by the Debtor will file fee applications for work performed to confirmation, at which time the Debtor may pay professionals directly for post-confirmation services without court permission.

### XIII.    EXECUTORY CONTRACTS & LEASES

Upon filing the case, the Debtor believed it had the following leases and contracts which shall be treated as set forth in section classes 5, 6 and 7 of the Plan:

1) Yamaha Motor Finance Corp.

2) United Leasing

3) Member contracts

Debtor assumes the executory contract with the Members. No further action shall be needed to effect assumption or rejection other than confirmation of the plan and such assumption or rejection shall be effective retroactively upon assumption or rejection. Upon speaking with United Leasing, Debtor learned the lease is between Fairways Development and United Leasing, so there is no lease to assume or reject. Similarly, the proof of claim of Yamaha Motor Finance Corp. revealed the lease is between Fairways Development and Yamaha Motor Finance Corp., and thus there is no lease to assume in the Plan. The claim of Yamaha Motor Finance Corp. shall be disallowed as to the Debtor. Debtor is unware of any other leases or contracts, and any other leases not specifically set forth herein are rejected upon Confirmation of the Plan.

### XIV.    JURISDICTION

All property remains as property of the estate until completion by the Debtor of all obligations under the Plan.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction over the Case after the Effective Date, including, without limitation, jurisdiction to:

(i)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority and secured or unsecured status of any claim or interest, including the resolution of any request for payment of any administrative claim, the resolution of any objections to the allowance or priority of claims or interests and the resolution of any dispute as to the treatment necessary to reinstate a claim pursuant to the Plan;

(ii)    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending before the Effective Date;

(iii)  Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any claims arising therefrom and modify this Plan because of any Order impacting assumption or rejection;

(iv)  Ensure that distributions to holders of allowed claims or allowed interests are accomplished pursuant to the provisions of the Plan;

(v)  Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(vi)  Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

(vii)  Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order, including the release provisions set forth in and contemplated by the Plan and the Confirmation Order, or any entity's rights arising under or obligations incurred in connection with this Plan or the Confirmation Order;

(viii)  Subject to any restrictions or modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify this Plan before or after the Effective Date pursuant to § 1127 of the Bankruptcy Code, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, this Plan, , the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

(ix)  Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(x) Enter and implement such Orders as are necessary or appropriate if the Confirmation

Order is for any reason modified, stayed, reversed, revoked or vacated;

     (xi) Determine any other matters that may arise in connection with or  relating  to  the Plan,  the Confirmation Order or any contract, instrument, release,  indenture or other agreement or document created in connection with this Plan, or the Confirmation Order, except as otherwise provided in this Plan;

  (xii) Enter an Order Closing the Reorganization Case; and

  (xiii) Rule on post-confirmation matters specifically provided for in the Bankruptcy Code, including as set forth in §1193;

  Except as otherwise provided herein, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall retain (and may enforce) any claims, rights and causes of action that the Debtor may hold against any person, including, _inter alia_, any claims, rights or causes of action under § 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory.  There are no such known claims.

## XV.  CONFIRMATION

  Debtor requests confirmation of  the Plan contending all of the applicable requirements of confirmation are met and each class of claims within the plan consents to treatment under the plan.  Upon confirmation, Debtor will begin to distribute payment to Creditors being paid under the Plan with the first payment being due 30 days after the entry of the confirmation order.

## XVI. SUBSTANTIAL CONSUMMATION

  When the Debtor has made the first payment under the plan, it may apply to the court to close the case.  Upon closure of the case, payments pursuant to the plan will continue as provided by the Plan.  Any professionals retained after the case has been closed will not need to apply for court authorization and neither will any fees paid to professionals for work performed postconfirmation need court approval.  The filing of monthly reports will cease upon closure of the case.  Further, upon substantial consummation, the services of the trustee will terminate.

## XVII.    POST-CONFIRMATION ACTS

17.1    The Debtor,, and its agents, shall perform all acts necessary to complete and consummate this Plan, to include:

a.    Prosecution of all claims against third parties and claims challenges filed against the Debtor by third parties;

b.    Execution and filing of all legal documents required; and

c.    Performance of any and all functions required by the Code.

17.2    The Debtor will file any documents requested by the Court, Trustee or by the Office of United States Trustee.

## XVIII.  "CRAM DOWN"

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number and two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.

## XIX.    DISCHARGE

Debtor requests a discharge of its debts upon entry of the Confirmation Order.

## XX.    CONCLUSION

Creditors and parties in interest should review carefully the contents of the Plan of Reorganization herewith to determine specific treatment of their rights or claims against the Debtor.  The Debtor believes that the provisions it has made for its Creditors are fair and equitable and that the Plan, as confirmed, will provide benefit for all parties.

/s/ John T. Bakhaus
John T. Bakhaus, as General Manager for
The Windermere Club, LLC

MOORE TAYLOR LAW FIRM, P.A.

By:     /s/ Jane H. Downey
       Jane H. Downey, ID 5242
       Post Office Box 5709
       1700 Sunset Boulevard
       West Columbia, SC 29171
       (803) 454-1983
       jane@mttlaw.com
       Attorney for Debtor-in possession

September 30, 2020

**<u>Exhibit A</u>**

**Profit & Loss**
January through December 2021

| | Jan 21 | Feb 21 | Mar 21 | Apr 21 | May 21 | Jun 21 | Jul 21 | Aug 21 | Sep 21 | Oct 21 | Nov 21 | Dec 21 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | |
| 4000 · Golf, Tennis, & Dues | 75,000.00 | 87,000.00 | 98,000.00 | 111,000.00 | 138,000.00 | 112,000.00 | 97,000.00 | 99,000.00 | 116,000.00 | 139,000.00 | 119,000.00 | 82,000.00 | 1,273,000.00 | Note: Gross Revenue=$156,000 |
| 5000 · Restaurant & Bar | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 13,000.00 | 93,600.00 | $156,000 x .6 = $93,600 Net Revenue |
| **Total Income** | 88,000.00 | 100,000.00 | 111,000.00 | 124,000.00 | 151,000.00 | 125,000.00 | 110,000.00 | 112,000.00 | 129,000.00 | 152,000.00 | 132,000.00 | 95,000.00 | 1,429,000.00 | |
| **Gross Profit** | 88,000.00 | 100,000.00 | 111,000.00 | 124,000.00 | 151,000.00 | 125,000.00 | 110,000.00 | 112,000.00 | 129,000.00 | 152,000.00 | 132,000.00 | 95,000.00 | 1,429,000.00 | |
| **Expense** | | | | | | | | | | | | | | |
| Advertising & Promotion | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 1,114.13 | 13,369.61 | |
| Automobile Expense | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 160.86 | 1,930.30 | |
| Bank Fees | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 1,628.40 | 19,540.80 | |
| Computer & Internet Expenses | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 1,394.09 | 16,729.02 | |
| Dues & Subscriptions | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 302.69 | 3,632.26 | |
| Equipment Leasing | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 58,133.28 | |
| Event Expense Staff | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 72,000.00 | |
| Handicap Fee Service | - | - | 1,800.00 | 180.00 | | | | | | | | | 1,980.00 | |
| Insurance | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 4,163.33 | 49,959.96 | |
| Interest Expense | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 230.61 | 2,767.34 | |
| Payroll Taxes | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 3,246.27 | 38,955.20 | |
| Postage | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 387.72 | 4,652.62 | |
| Professional Fees | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 123,000.00 | |
| Repairs & Maintenance | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 122,100.00 | |
| Salaries & Wages | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 46,236.71 | 554,840.46 | |
| Supplies | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 82,800.00 | |
| Taxes & Licenses | 1,750.00 | 1,750.00 | 2,400.00 | 4,500.00 | 4,250.00 | 4,100.00 | 3,000.00 | 3,750.00 | 4,250.00 | 3,750.00 | 2,750.00 | 1,500.00 | 37,750.00 | |
| Telephone Expense | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 622.00 | 7,464.00 | |
| Utilities | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 4,573.60 | 54,883.20 | |
| **Total Expense** | 103,979.84 | 103,979.84 | 106,429.84 | 106,909.84 | 106,479.84 | 106,329.84 | 105,229.84 | 105,979.84 | 106,479.84 | 105,979.84 | 104,979.84 | 103,729.84 | 1,266,488.04 | |
| **Net Ordinary Income** | (15,979.84) | (3,979.84) | 4,570.16 | 17,090.16 | 44,520.16 | 18,670.16 | 4,770.16 | 6,020.16 | 22,520.16 | 46,020.16 | 27,020.16 | (8,729.84) | 162,511.96 | |
| **Net Income** | (15,979.84) | (3,979.84) | 4,570.16 | 17,090.16 | 44,520.16 | 18,670.16 | 4,770.16 | 6,020.16 | 22,520.16 | 46,020.16 | 27,020.16 | (8,729.84) | 162,511.96 | |

## The Windemere Club, Inc.
## Profit & Loss
### January through December 2022

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | | |
| 4000 · Golf, Tennis & Dues | 80,000.00 | 89,000.00 | 111,000.00 | 118,000.00 | 140,000.00 | 119,000.00 | 105,000.00 | 107,000.00 | 121,000.00 | 146,000.00 | 124,000.00 | 85,000.00 | 1,345,000.00 | Note: Gross Revenue=$180,000 |
| 5000 · Restaurant & Bar | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 108,000.00 | $180,000 x .6 = $108,000 Net Revenue |
| | | | | | | | | | | | | | - | |
| **Total Income** | 95,000.00 | 104,000.00 | 126,000.00 | 133,000.00 | 155,000.00 | 134,000.00 | 120,000.00 | 122,000.00 | 136,000.00 | 161,000.00 | 139,000.00 | 100,000.00 | 1,525,000.00 | |
| **Gross Profit** | 95,000.00 | 104,000.00 | 126,000.00 | 133,000.00 | 155,000.00 | 134,000.00 | 120,000.00 | 122,000.00 | 136,000.00 | 161,000.00 | 139,000.00 | 100,000.00 | 1,525,000.00 | |
| **Expense** | | | | | | | | | | | | | | |
| Advertising & Promotion | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 1,139.20 | 13,670.42 | |
| Automobile Expense | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 164.48 | 1,973.73 | |
| Bank Fees | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 1,665.04 | 19,980.47 | |
| Computer & Internet Expenses | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 1,425.45 | 17,105.42 | |
| Dues & Subscriptions | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 309.50 | 3,713.98 | |
| Equipment Leasing | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 4,844.44 | 58,133.28 | |
| Event Expense Staff | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 72,000.00 | |
| Handicap Fee Service | - | - | 1,840.00 | 180.00 | - | - | - | - | - | - | - | - | 2,020.00 | |
| Insurance | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 4,257.00 | 51,084.06 | |
| Interest Expense | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 235.80 | 2,829.61 | |
| Payroll Taxes | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 3,408.58 | 40,902.95 | |
| Postage | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 396.44 | 4,757.31 | |
| Professional Fees | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 10,250.00 | 123,000.00 | |
| Repairs & Maintenance | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 10,175.00 | 122,100.00 | |
| Salaries & Wages | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 48,548.54 | 582,582.48 | |
| Supplies | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 6,900.00 | 82,800.00 | |
| Taxes & Licenses | 1,800.00 | 1,800.00 | 2,500.00 | 4,600.00 | 4,350.00 | 4,250.00 | 3,000.00 | 3,750.00 | 4,250.00 | 3,750.00 | 2,750.00 | 1,800.00 | 38,600.00 | |
| Telephone Expense | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 636.00 | 7,631.94 | |
| Utilities | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 4,676.51 | 56,118.07 | |
| **Total Expense** | 106,831.98 | 106,831.98 | 109,371.98 | 109,811.98 | 109,381.98 | 109,281.98 | 108,031.98 | 108,781.98 | 109,281.98 | 108,781.96 | 107,781.98 | 106,831.98 | 1,301,003.73 | |
| **Net Ordinary Income** | (11,831.98) | (2,831.98) | 16,628.02 | 23,188.02 | 45,618.02 | 24,718.02 | 11,968.02 | 13,218.02 | 26,718.02 | 52,218.02 | 31,218.02 | (6,831.98) | 223,996.27 | |
| **Net Income** | (11,831.98) | (2,831.98) | 16,628.02 | 23,188.02 | 45,618.02 | 24,718.02 | 11,968.02 | 13,218.02 | 26,718.02 | 52,218.02 | 31,218.02 | (6,831.98) | 223,996.27 | |